IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

HEATHER RUTECKI,

           Plaintiff,

v.                                            CIVIL ACTION NO. 5:05-cv-00226

CSX HOTELS, INC., dba
The Greenbrier Resort,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motion for Excess Costs, Expenses and Fees Including Attorneys' Fees of Defendant CSX Hotels, Inc., d/b/a The Greenbrier Resort (Greenbrier) [Docket 238], the Greenbrier's Bill of Costs [Docket 240], Plaintiff's Motion to Supplement the Record on Appeal [Docket 247], and the Greenbrier's Cross-Motion for Costs [Docket 249]. For the reasons stated below, both of the Greenbrier's motions for excess costs, expenses, and fees are denied. Likewise, Plaintiff's motion to supplement the record is denied. The Greenbrier, however, will be awarded the amount set forth in its bill of costs.

    I.  THE GREENBRIER'S FIRST MOTION FOR EXCESS COSTS, EXPENSES AND FEES INCLUDING ATTORNEYS' FEES

The underlying factual history of this case is set forth in the Court's Memorandum Opinion granting summary judgment in the Greenbrier's favor on January 16, 2007 [Docket 236], and bears little relation to the pending motions. The relevant procedural history is, however, worth briefly noting. Plaintiff, by her former counsel James B. Lees, filed her complaint on March 17, 2005. The Court originally set a trial date for January 18, 2006. On October 28, 2005, the parties, each by

counsel, signed and filed a motion to continue the trial date, which the Court granted and which rescheduled the deadline for dispositive motions until March 24, 2006, and moved the trial date to May 16, 2006. Then, on March 10, 2006, a second motion to continue the trial was filed. This motion was signed by the Greenbrier's counsel on its behalf, and *also on behalf of Plaintiff's counsel*. As grounds for this continuance, the motion states that Plaintiff had not reached her maximum level of medical improvement and that her physicians recommended a second surgical procedure, which would have required further discovery relating to her medical condition. The Court granted the second motion to continue on March 17. The Second Amended Scheduling Order extended the deadline for dispositive motions until November 16, 2006, and set the trial for January 17, 2007. Thereafter, on May 26, 2006, the Greenbrier filed a motion for summary judgment.

Following the Greenbrier's motion for summary judgment, Mr. Lees filed a motion to withdraw as counsel for Plaintiff. No objections being made, the Court granted the motion. Plaintiff was (and still is) an attorney licensed to practice in the state of Florida, and she began to proceed *pro se*. Immediately following her counsel's withdrawal, Plaintiff filed the three motions that are the subject of the Greenbrier's request for excess costs and attorneys' fees. First, Plaintiff filed a motion to vacate the second amended scheduling order and to disallow the Greenbrier's motion for summary judgment. In this motion, Plaintiff argued that the Greenbrier improperly represented to the Court that a *joint* motion to continue was filed on March 10, 2006, that she intended to have a second surgery, and that she had not reached her maximum medical improvement. In the second motion, Plaintiff asked the Court to transfer venue from the Southern District of West Virginia to the Southern District of Florida for various reasons, primarily focused on the burden a trial in West Virginia would be upon her and her witnesses. The third motion that the Greenbrier seeks costs for

having to respond to is a motion for Rule 11 sanctions based on Plaintiff's accusation that the Greenbrier made misrepresentations to her and the Court.

Several months after these motions were filed, on January 29, 2007, after having been granted summary judgment, and while the case was pending appeal before the United States Court of Appeals for the Fourth Circuit, the Greenbrier filed one of the pending motions for excess costs, expenses and fees against Plaintiff arguing that she unreasonably and vexatiously multiplied the proceedings in this case pursuant to 28 U.S.C.§ 1927 and the Court's inherent authority to sanction abuses in the judicial process. The Greenbrier's grounds for the motion are the three abovementioned *pro se* motions and various other acts Plaintiff allegedly did during the course of this litigation, which the Greenbrier collectively refers to as "Miscellaneous", and breaks them up into four subcategories: Earnings, financial, and IRS; Abandoned claims and witnesses; Harassment, Dishonesty, Additional Discovery to Rebut; and Failure to appear.

Under 28 U.S.C. § 1927, and the inherent authority of a district court, this Court is permitted to award the remedy requested by the Greenbrier and assess attorneys' fees for misconduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Blue v. U.S. Dep't of the Army*, 914 F.2d 525 (4th Cir. 1990). However, in the Court's discretion, it declines to exercise that authority. As noted by Plaintiff, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Mindful of this mandate, the Court finds that the motions brought by Plaintiff, while not legally persuasive, were not brought in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* at 45. Rather, the Court finds that the motions were brought with a good faith, albeit misguided, hope that the Court would grant the relief requested. For example, regarding her motion to transfer venue, it is well-settled that the

Court has the discretion to transfer a case to a different district for the convenience of the parties and in the interest of justice. *See* 28 U.S.C. § 1404(a). Given that discretion, and the fact that her former counsel, a West Virginia attorney, had recently filed a motion to withdraw, it would arguably have been in Plaintiff's best interests to have the case transferred to a district closer to her as it would have made the case easier for her to litigate. Based on this, the Court cannot say that the motion was brought in bad faith or to multiply the proceedings vexatiously. Rather, it seems that Plaintiff brought the motion for her benefit, and it was not a claim totally without merit, as the decision to transfer is within the Court's discretion. As such, any claim to attorneys' fees based on preparing a response to a simple motion to transfer is unpersuasive. Likewise, the other two motions, and the actions referred to as "Miscellaneous" were not filed or done in bad faith, vexatiously, wantonly, or for oppressive reasons, *Chambers*, 501 U.S. at 45, and the Court refuses to exercise its discretion to award excess costs and attorneys' fees to the Greenbrier.[1]

## II. BILL OF COSTS

Regardless of its failed attempt to recover attorneys' fees from Plaintiff, because summary judgment was entered in its favor and pursuant to Fed. R. Civ. P. 54(d)(1), 28 U.S.C. § 1920, and LR Civ. P. 54.1, the Greenbrier may still be entitled to an award of costs. "Prevailing parties are

---

[1] The Court notes that, with regard to the category of "Miscellaneous" actions entitled "Harassment, Dishonesty, Additional Discovery to Rebut", it is ironic that the Greenbrier is accusing Plaintiff of harassment when in its memorandum of law in support of the pending motion, it includes comments such as: "Even though it would seem to be a likely conclusion, the plaintiff cannot be excused as an incompetent, a lawyer in over her head and who is thus entitled to some slack." Docket 239 at 10. Given that statement and the context of the pending motion, *i.e.*, following summary judgment granted in its favor, the Greenbrier comes dangerously close to doing what it is accusing Plaintiff of doing -- acting in bad faith, vexatiously, wantonly, or for oppressive reasons -- and the Court notes that it seriously considered ordering the Greenbrier to pay for Plaintiff's attorneys' fees in having to respond to this motion. Hopefully, the Court's restraint will set an example for the parties for future filings, if any.

entitled to move for an award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1) . . . ." *Teague v. Bakker*, 35 F.3d 978, 995-96 (4th Cir. 1994). Rule 54(d)(1) provides, in pertinent part, "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs . . . shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." *See also Teague*, 35 F.3d at 996. "The rule makes clear that, in the ordinary course, a prevailing party is entitled to an award of costs." *Id.* (citing *Constantino v. Am. S/T Achilles*, 580 F.2d 121, 123 (4th Cir. 1978)). In fact, there is a "presumption in favor of an award of costs to the prevailing party." *Id.* (citations omitted). If the Court were to depart from the general rule, then it "must justify its decision by 'articulating some good reason for doing so.'" *Oak Hall Cap and Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990); *see Constantino*, 580 F.2d at 123 (reversing the district court's denial of costs where the court stated no reason for its action). The Court notes that Plaintiff filed no objection to the bill of costs. Therefore, the Court finds that there is no good reason to depart from the presumption in favor of an award of costs, and the Court will therefore award costs to the Greenbrier. *See Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 354 n.4 (4th Cir. 2003).

In its filing, the Greenbrier requests a total of $4,850.65 for the costs incurred during nine scheduled depositions. Under 28 U.S.C. § 1920(2), the Court is permitted to tax as costs "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." *See also Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448 (4th Cir. 1999) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991)); *Coats v. Penrod Drilling Co.*, 5 F.3d 877, 891 (5th Cir. 1993) (stating that "whether a deposition . . . was necessarily obtained for use in the case is a factual determination to be made by the district court; we accord great latitude to this

determination"); *Wyne v. Medo Indus.*, 329 F. Supp. 2d 584, 588 (D. Md. 2004). "The costs associated with a deposition are commonly awarded 'when the taking of the deposition is reasonably necessary at the time of its taking.'" *Wyne*, 329 F. Supp. 2d at 588 (quoting *LeVay Corp. v. Dominion Fed. Sav. & Loan Assoc.*, 830 F.2d 522, 528 (4th Cir. 1987)). As mentioned above, Plaintiff has failed to respond to the Greenbrier's filing of the bill of costs and has consequently failed to cite the applicable law or argue as to why any of the nine depositions were not reasonably necessary at the time of their taking. *Id*. Therefore, because the bill of costs has attached to it a signed declaration of the Greenbrier's attorney that the costs are correct and were necessarily incurred in this case, *see* 28 U.S.C. § 1924, the Court awards the Greenbrier the requested $4,850.65.

### III. MOTION TO SUPPLEMENT RECORD ON APPEAL AND THE GREENBRIER'S SECOND MOTION FOR EXCESS COSTS, EXPENSES AND FEES INCLUDING ATTORNEYS' FEES

Next, Plaintiff requests that she be allowed to supplement the record on appeal in order to add Defendant's Unverified Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Defendant. Specifically, Plaintiff would like to add the Greenbrier's answer to Interrogatory No. 13, where Plaintiff alleges that the Greenbrier admitted that Plaintiff's horse turned around "as a result" of Karl Diem's horse wheeling around and therefore establishes that "the actions of Karl Diem's horse, Thunder, were 'causally related' to the subsequent actions of Plaintiff's horse, Trump." Docket 248 at 5 (footnote omitted).

> Rule 10(e) of the Federal Rules of Appellate Procedure states:
>
> (1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.
> (2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:
> (A) on stipulation of the parties;

> (B) by the district court before or after the record has been forwarded; or
> (C) by the court of appeals.
> (3) All other questions as to the form and content of the record must be presented to the court of appeals.

Additionally, Local Rule 10(d) of the Rules of Practice for the United States Court of Appeals for the Fourth Circuit, entitled "Supplemental Records, Modification, or Correction" provides:

> Disputes concerning the accuracy or composition of the record on appeal should be resolved in the trial court in the first instance, although the Court of Appeals has the power, either on motion or of its own accord, to require that the record be corrected or supplemented. It is unnecessary to seek permission of the Court of Appeals to supplement the record and the record may be supplemented by the parties by stipulation or by order of the district court at any time during the appellate process.

Courts within the Fourth Circuit have construed Fed. R. App. 10(e) to allow supplementation of the record "(1) if any difference arises as to what actually occurred before it, or (2) if anything material to either party is omitted from the record by error or accident." *Thomas v. Lodge No. 2461 of Dist. Lodge 74 of the Int'l Ass'n of Machinists and Aero. Workers*, 348 F. Supp. 2d 708, 710 (E.D. Va. 2004) (quoting *Himler v. Comprehensive Care Corp., W*., 790 F. Supp. 114, 115 (E.D. Va. 1992)). Moreover, "the purpose of Rule 10(e) is not to allow a district court to add to the record on appeal matters that did not occur there in the course of the proceedings leading to the judgment under review." *Id*. (citations omitted). As noted in *Thomas*, and directly applicable in this case, "the Fourth Circuit has held that a district court properly refused to supplement the record on appeal with discovery documents that were 'not filed . . . or brought to the attention of the district court, as it considered the various papers in evaluating the motion for summary judgment.'" *Id*. (quoting *Rohrbough v. Wyeth Labs., Inc*., 916 F.2d 970, 973, n.8 (4th Cir. 1990)); *see also Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1012 (6th Cir. 2003) (attempting to add new material that was never considered by the district court is not permitted under the rule).

Plaintiff fails to distinguish this case from the Fourth Circuit's language in *Rohrbough* or any of the other applicable cases. Accordingly, her motion is unpersuasive. Furthermore, this Court held in its memorandum opinion granting summary judgment that there was no causal relationship between the Greenbrier's breach of its statutory duties, if any, and Plaintiff's injuries. Contrary to what Plaintiff asserts in her motion to supplement the record, the Court did not hold that there was no evidence of a causal relationship between the behavior of Diem's horse and Plaintiff's horse's reaction. In fact, the opinion states, "the intervening event of the inexplicable behavior of the *two* horses appears to be the cause of this accident." Docket 236 at 21 (emphasis added). The salient issue, which Plaintiff misses in this motion and failed to supply evidence of in response to the motion for summary judgment, is whether a breach of the Greenbrier's statutory duties was causally related to Plaintiff's injuries, not whether the behavior of the guide's horse was causally related to the subsequent actions of Plaintiff's. Thus, even if the response to Interrogatory No. 13 was made part of the record, the statement "plaintiff was riding Trump who subsequently turned around as a result of Thunder wheeling around []" still does not create a genuine issue of material fact with regard to whether the Greenbrier's breach of its statutory duties was causally related to Plaintiff's injuries. Moreover, as the Greenbrier notes, Plaintiff had this evidence before her for several months. In fact, over the Greenbrier's objection, the Court permitted Plaintiff to amend her response to the Greenbrier's motion for summary judgment because Plaintiff filed the original response *pro se*. In the amended response, Plaintiff made no reference to Interrogatory No. 13. Both Plaintiff and Plaintiff's current counsel had the opportunity to address this evidence and failed to do so. Accordingly, Plaintiff's motion to supplement the record on appeal is denied.

Finally, although unsuccessful, the Court finds that the motion to supplement the record was not brought in bad faith, vexatiously, wantonly, or for oppressive reasons, *Chambers*, 501 U.S. at 45, and denies the Greenbrier's second motion for excess costs, expenses, and fees.

## *IV. CONCLUSION*

In closing, one last comment is in order. The Court has made its ruling with regard to the Greenbrier's motion for summary judgment, and now the case is pending before the Fourth Circuit. Any further filings in this Court during the pendency of the appeal will be closely analyzed for sanctionable conduct. With that said, for the reasons stated above, the Court: (1) **DENIES** the Greenbrier's Motion for Excess Costs, Expenses and Fees Including Attorneys' Fees [Docket 238]; (2) **DENIES** Plaintiff's Motion to Supplement the Record on Appeal [Docket 247]; (3) **DENIES** the Greenbrier's Cross-Motion for Costs [Docket 249]; (4) **AWARDS** the Greenbrier $4,850.65 in costs pursuant to Fed. R. Civ. P. 54(d)(1) and in accord with the Greenbrier's Bill of Costs [Docket 240]; and (5) **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:   June 20, 2007

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE